(40 App. Div. 506.)

### GRAY v. RICHMOND BICYCLE CO.

(Supreme Court, Appellate Division, First Department. May 19, 1899.)

JUDGMENT—FRAUD ON CREDITOR—MERGER OF NOTE.

    A corporation, having failed, made a second mortgage securing several creditors in order of preference, and then wrote to the creditor last preferred, who held the debtor's note and lived in another place, that such mortgage had been given, but not stating that there was any order of preference, or that a first mortgage had been given, and stating that the assets would be sufficient to pay the note, and that the creditor had better obtain judgment. Thereupon the latter authorized the attorney for all the other creditors to enter such judgment. The attorney, in order to obtain a receiver, entered judgments for all the creditors, and sent to the last preferred creditor a copy of the second mortgage. The assets were insufficient to pay the latter's note. Thereafter the attorney notified the creditor to send a special representative to protect his interests, which was done, and the latter could have fully informed himself as to the facts. There was no evidence that the attorney acted in bad faith in failing to inform the creditor as to all the facts before entering judgment. The latter made no attempt to vacate his judgment, and assigned the note. *Held*, that no fraud was practiced on the creditor that would prevent the note from being merged in the judgment, and that an action thereon could not be maintained.

Appeal from trial term, New York county.

Action by Allan J. Gray against the Richmond Bicycle Company. From a judgment dismissing the complaint and denying a new trial (55 N. Y. Supp. 787) plaintiff appeals. Affirmed.

This action was brought by the plaintiff, as assignee of the Allerton-Clarke Company, an Illinois corporation, having a place of business in New York, to recover on a promissory note made to the order of that company by the defendant, a corporation organized under the laws of Indiana, and located at Richmond, in that state. The answer sets up a merger of the note in a judgment recovered in the state of Indiana against the defendant, stating that the defendant had executed a mortgage on its property to various creditors, among which, and last in order of preference, was the Allerton-Clarke Company; that, on notice thereof sent the Allerton-Clarke Company, it had directed certain attorneys, who represented the other creditors, to be its representatives in the mortgage-forclosure proceedings, which were duly had, and a receiver appointed; and that the plaintiff was fully aware of these facts when the assignment of the note in suit was made. On the trial the plaintiff endeavored to show that the judgment referred to was procured by fraudulent representations and concealments of the defendant. It appeared that the note was made August 14, 1897, payable within 60 days, and was trans-

ferred to the plaintiff on November 5, 1897; that on September 23, 1897, the defendant failed, having on the same day executed two mortgages,—the first to the Second National Bank, its principal creditor, and the other to certain other creditors in order of preference (including the Allerton-Clarke Company last) mentioned in the mortgage,—thereby intending to secure to the Allerton-Clarke Company payment on two notes, one of which was the note in question. On September 24, 1897, the defendant's president wrote to the plaintiff's assignor: "At a meeting of the directors * * * it was decided best to give you a mortgage for the amount of our indebtedness to you. * * * The same mortgage covers notes of D. G. Reid, Mary Snodgrass, Henry Schurman, and Main & Monroe. You will find that the property will be ample to pay the notes. * * *" A second letter, on the following day, informed the Allerton-Clarke Company: "The Richmond Bicycle Company has executed a mortgage securing your claim, along with the claims of Daniel G. Reid, Mary Snodgrass, W. N. Wilson, Geo. Schurman, and Main and Monroe. The assets of the company are ample to pay all these preferred claims. On next Tuesday, judgments on all of these claims, except yours, will be taken by our attorneys, Jackson and Starr. It is to your interest to have judgment taken on the same day in the same proceeding. Please wire Jackson & Starr to represent you in the proceeding and protect your claim. We will see that you are protected." The Allerton-Clarke Company thereupon telegraphed Jackson & Starr, the attorneys for all the creditors: "Take judgment on our claim against Richmond Bicycle Co. Wire reply." A letter dated September 28th, from the Allerton-Clarke Company to Jackson & Starr, says: "We received your telegram, and beg to notify you that we will forward you notes when we receive same from bank. * * * We will be glad to hear that you have obtained judgment on our claim." To this the attorneys replied September 30, 1897: "Your judgment is all ready for entry as soon as we receive the original notes." The judgment was entered about September 29, 1897. In a letter to the attorneys dated October 2, 1897, the Allerton-Clarke Company said: "Before proceeding further in this matter, we would like to know from you what advantage we derive by turning our claim into a judgment. Are we not secured by the mortgage, and will we gain anything further by obtaining a judgment? We would feel obliged if you will send us a copy of the mortgage." A copy of the mortgage was sent them, with a letter, dated October 4, 1897, stating: "It was deemed best by the Richmond creditors under the mortgage to put their claims in a judgment, and have an execution in the hands of the sheriff, so as to control the appointment of the receiver. * * * We note that you say: 'Before proceeding further in this matter, we would like to know from you what advantage we derive.' * * * We would like to hear from you promptly, in view of the explanation above, as to whether you wish to join in the application for a receiver, which will probably be made next week. * * * Awaiting your instruction." An action was commenced on October 8, 1897, in behalf of the mortgagees, and the Allerton-Clarke Company were notified that a receiver was appointed. On October 18, 1897, they were asked if they could have a representative to protect their interest, and telegraphed: "Have wired Main, in Pittsburg, to leave for Richmond immediately." On October 19, 1897, an interview was had in Richmond, Ind., between the Allerton-Clarke Company's representative and Jackson & Starr. Mr. Main testified that (at this interview): "The main subject of our conversation there was to ascertain what the assets of the Richmond Bicycle Company would pan out, and what disposition we would make of the remaining stock. * * * I don't remember that there was anything said regarding the mortgage. * * * Up to that time, I did not know that we were not equally protected with the others." That he remembered nothing being said about a judgment. The report made by him to the company relating to this interview was excluded from evidence, under exception. Two of the defendant's witnesses testified that the facts regarding the notes were discussed with Mr. Main at the interview. A. J. Gray, the plaintiff, who is bookkeeper for the Allerton-Clarke Company, testified, among other things, that he had seen the mortgage in question, but had not read it through, and first heard that a prior mortgage had been given, and that the Allerton-Clarke Company were the last of the preferred credit-

ors, from Mr. Main; that Mr. Main suggested that he should go to Richmond, and he did so on November 8, 1897, and was informed that judgment had been entered in favor of the Allerton-Clarke Company, but "did not know that was on the notes, and thought it was our mortgage claim"; that the Allerton-Clarke Company received nothing from the judgment. It further appears that, just prior to the failure of the defendant, the treasurer of the company withdrew funds, and paid notes owing from the company to his father. The company's assets were no more than sufficient to pay the claims of two of the preferred creditors. At the close of the case the judge dismissed the complaint, stating that "the recovery of the judgment in the Indiana court effectively merged this cause of action," and declined to submit the issue to the jury on the question of fraud. Motion for a new trial was denied, and order so entered, from which, and from the judgment, this appeal it taken.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Payson Merrill, for appellant.
John S. Melcher, for respondent.

O'BRIEN, J. The appellant does not question the well-settled principle of law that a note upon which a judgment has been obtained is merged in the judgment, so that thereafter an action cannot be maintained on the note itself. The appellant is right, however, in contending that, where the judgment was entered without authority and fraudulently, no merger takes place, and a suit may be maintained upon the note. The question, therefore, turns upon whether there was any such fraud practiced upon the plaintiff's assignor, in inducing it to take the judgment, as would entitle it or the plaintiff to bring an action on the note, regardless of the judgment entered. To have a judgment instead of a simple claim, and thus to become a judgment creditor instead of being a general creditor, is ordinarily regarded as preferable; and it would seem, at first, that it is anomalous to charge fraud after one has obtained something better than was originally possessed. It is a common occurrence to have a debtor vigorously assail his creditor's judgment, but it is rather unusual for a creditor obtaining a judgment to complain of that fact. We do not mean to infer that the court would not be justified in setting aside a judgment where the creditor was induced by fraud to take it, and was thereby deprived of some other right or remedy. But, such a case being exceptional, the facts upon which the charge of fraud is based must be carefully examined. Here the fraud charged is said to consist of false representations made by the president of the defendant, when the mortgage was given to secure the Allerton-Clarke claim, to the effect that the assets would realize enough to pay that claim in full, and that the defendant would see to it that the Allerton-Clarke Company was fully protected. It is not made to appear that this statement of the advantages to be derived under the mortgage was intentionally false, but, rather, the inference is that it was the result of a too sanguine view of the value of the assets; and, whether it was or not, being a statement, not of a present fact, but of future expectations, it was not fraudulent. After the mortgage was given, it was deemed advisable to have a receiver appointed, and in that connection the attorneys who represented the creditors secured by the first and second mortgages proceeded to enter judgments for them;

first obtaining authority, among others, from the Allerton-Clarke Company. Here, again, it is not made to appear that the action thus taken was detrimental or fraudulent; but, on the contrary, it appears that, to the extent that the assets would go in paying the claims in their order of preference, it was an advantage to the creditors. As there was, however, a deficiency of assets, and no advantage accrued to the plaintiff's assignor, the argument is made that, had it been known that there would be such a result, the authority to enter judgment would not have been given, and that the failure to fully inform the plaintiff's assignor constituted the fraud. It is true that no direct benefit was derived by the plaintiff's assignor from the judgment, but there is no evidence that the purpose or intention of the attorneys entering it was to injure the Allerton-Clarke Company, or to deprive it of any advantage which it otherwise might have obtained. The most that can be said is that it was a question of propriety, whether the same attorneys who had previously represented the defendant company, and who were charged with the interests of the bank which was secured by the first mortgage, should also appear and act for the creditors named in the second mortgage, including the plaintiff's assignor. In the absence of other evidence tending to show that the attorneys did not act in good faith, and in view of the fact that, when the interests and rights of the creditors became conflicting, the attorneys immediately notified the plaintiff's assignor of the necessity of having some one on the spot who would look after and represent its interests, the attorneys' acts were relieved of the imputation of fraud or bad faith. In compliance with the notification, the Allerton-Clarke Company sent a representative to investigate the condition of affairs; and this person, had he desired, could have ascertained all the facts connected with the mortgage and entry of judgment. He asserts, however, that he was not authorized to act for the Allerton-Clarke Company, and further states that he was not fully informed of the situation, and insists that he in no way ratified the attorneys' acts. In these assertions, however, he is contradicted by two witnesses. If our conclusion depended upon what actually occurred after the representative sent by the Allerton-Clarke Company arrived in Richmond, there might—as the testimony upon this point was conflicting—have been a question for the jury. Considering, however, the fact of his presence at the place, and his access to sources of information, together with the further fact that the Allerton-Clarke Company had obtained a copy of the mortgage, which clearly stated that they were not preferred equally with the other creditors, but were only fifth in the order of payment, our conclusion must be that a situation was presented which called upon the plaintiff's assignor to put in some disclaimer, or take some other positive action, if it intended to thereafter assert that it had been overreached or defrauded by the attorneys who induced it to enter judgment. The Allerton-Clarke Company, as soon as it found out the facts, could have vacated the judgment; the power to do so being entirely in its own hands. It preferred, however, to wait, and then sue on the note, regardless of the judgment, and, when confronted with the question of merger, to insist that, though it had received a copy of the mortgage,

·it had not observed its terms; that, though it sent a representative, it never knew the true state of affairs; and that the defendant and the attorneys who represented the creditors in Indiana were guilty of fraud,—the one in asserting that the assets were sufficient to pay all the claims included in the mortgages, and the other by failing to bring home directly and fully every fact connected with the mortgage and judgment.

We agree with the court below that the effort to assail the Indiana judgment as fraudulent was not successfully sustained, and therefore the judgment and order appealed from should be affirmed, with costs. All concur.